**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **JAMES KELLY,** | : | **CIVIL ACTION** |
| **Petitioner,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **GERALD L. ROZUM, ET AL.,** | : | |
| **Respondents** | : | **NO. 08-1073** |

**MEMORANDUM**

GENE E.K. PRATTER, J. OCTOBER 5, 2009

Petitioner James Kelly was convicted of murder and conspiracy. Petitioner's § 2254 petition alleges that his trial counsel was ineffective. Magistrate Judge Rice reviewed the record and the parties' submissions and issued a Report and Recommendation reflecting his conclusion that all of Petitioner's claims should be denied as procedurally defaulted, non-cognizable, or meritless. Petitioner objected to the Report and Recommendation.

There is an no apparent conflict regarding the applicable caselaw, and the Court concludes that Judge Rice addressed all of the issues carefully and in depth. Nevertheless, several of the arguments advanced by Petitioner, particularly regarding whether there would have been a "reasonable probability of a different outcome" if defense counsel had called Rev. James Becoat, Ms. Denise Holsey-Miller, Mr. Lex Traylor, and Ms. Joan Arrington to testify at the trial, prompted the Court to address Petitioner's objections in additional detail. Accordingly, the Court allowed supplemental briefing regarding Petitioner's objections to the Report and Recommendation.

After receiving and reviewing all of the parties' submissions, the Report and Recommendation, and the ample state court record, the Court determines that the parties have

had sufficient opportunity to articulate their arguments and that oral argument is not necessary. For the reasons that follow, the Court shall approve and adopt Judge Rice's Report and Recommendation.

## I. Petitioner's Objections to the Report and Recommendation and Supplemental Briefing

In the initial objections, Petitioner's counsel asserted that his trial counsel was ineffective because he failed to 1) "[p]rovide an alibi notice where the obvious defense was alibi"; 2) "[c]all an alibi witness (Rev. BeCoat) [sic] who was actually present just outside the court room"; 3) "[c]all two witnesses (Holsey Miller and Traylor) who knew petitioner and saw two men (neither of them petitioner) who were highly probable as the actual shooters; these witnesses were known to defense counsel, or should have been"; and 4) "[c]all petitioner as a witness, on spurious grounds." No other grounds were listed in this initial set of objections. See Objections to Report and Recommendations of Magistrate Judge Timothy R. Rice, Docket No. 27, at 2.

Petitioner then filed a letter, pro se, which included his own set of objections. See Letter from Mr. Kelly, Docket No. 28. These objections were much more expansive than the objections that his attorney had filed. Shortly thereafter, counsel sent a letter to the Court noting that he was "happy to confirm and adopt Mr. Kelly's Objections as well as the ones [counsel] filed, if that meets with your approval." March 12, 2009 Letter from Counsel. The Court allowed supplemental briefing, and counsel submitted a more expansive, supplemental brief that addressed additional claims that had been mentioned in Petitioner's pro se letter but were *not* mentioned in counsel's original set of objections to the Report and Recommendation.

## II. Defaulted Claims and/or Waived Claims

In the supplemental brief, Petitioner's counsel presents many arguments that were not addressed in his original set of objections to the Report and Recommendation, and that involve claims that Judge Rice properly found to be procedurally defaulted or waived. See Report and Recommendation at 13-15, 18. For instance, Petitioner argues that the primary witness against him, Ernestine Williams, only identified Petitioner after going through a "flawed" and "suggestive" identification procedure. He also argues that his trial counsel failed to object to certain taped testimony, as he should have, and failed to file an appeal after the trial. Petitioner also questions the credibility of various snippets of testimony and other evidence, pointing out supposed "discrepancies" in what seems to be a "weight of the evidence" argument. He hints that the police may have committed various Brady violations. Finally, he argues that his trial counsel failed to call Petitioner to the stand, as he should have in light of Pennsylvania Rule of Evidence 609; indeed, Petitioner asserts that Petitioner was never even *asked* whether he wanted to testify on his own behalf. See Mem. on Behalf of Pet. James Kelly ("Kelly Supplemental Mem."), Docket No. 32, at 2-8.

Notably, Petitioner does not argue that these issues were *not* procedurally defaulted or waived. Instead, he merely states:

> I do not propose to analyze each instance where counsel dropped the ball in respect of the layering and wavier issues. Suffice it to say that I rely on the failure to present all available witnesses, and particularly Reverend Becoat, as a ground that has never been waived or abandoned. However, the other instances of ineffectiveness are important to show that Kelly's conviction was a "miscarriage of justice" under Pennsylvania law.

Kelly Supplemental Mem. at 10.

With the invocation of the phrase "miscarriage of justice," as Judge Rice surmises,

Petitioner seems to be alluding to a general argument that a petitioner may obtain federal habeus review of claims that were defaulted pursuant to independent and adequate state procedural rules if he "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental *miscarriage of justice*." See Report and Recommendation at 18-19 (emphasis added, and case citations omitted). However, Petitioner does not address the high threshold for showing "miscarriage of justice," and the Court agrees with Judge Rice that Petitioner has not offered anything to show that Petitioner has met this requirement. See Report and Recommendation at 18-20.[1] Indeed, Petitioner offers no evidentiary basis or legal analysis for the proposition that no reasonable juror could or would have found him guilty. Accordingly, the Court concludes that Judge Rice correctly declined to consider Petitioner's procedurally-defaulted and waived claims.

Even if the claim regarding the failure to call Petitioner to the stand were *not* procedurally defaulted, it would be unpersuasive, given the likelihood that Petitioner's criminal record would have either justified the professional judgment of counsel not to call Petitioner as a witness or, if Petitioner did testify, would have added to the substantial weight of the case against him.

Petitioner argues that he should have been called to the stand and that his prior convictions would not have come out because he "had been convicted in 1978 of robbery and in 1984 for retail theft, and his time had been served." Kelly Supplemental Mem. at 7, n. 11. However, Petitioner does not specify *when* he was released from confinement for these convictions, which would bear

---

[1] For instance, counsel has not offered any new evidence to show that no reasonable juror would have found Petitioner guilty.

on when his "10-year look-back" term started. See Pa. R. Evid. 609. The decision not to call Petitioner to the stand appears to be reasonable and within the exercise of trial counsel's professional judgment.

## III. Trial Counsel's Failure to Call Certain Witnesses at Trial

Petitioner's main argument regarding trial counsel's alleged ineffectiveness is that trial counsel should have called Rev. Becoat, Ms. Holsey Miller, Mr. Traylor, and Ms. Joan Arrington to testify at trial.

Petitioner asserts that Rev. Becoat should have been called at trial as an alibi witness. Rev. Becoat allegedly would have testified that on the night of the shooting, he was with Petitioner and others (including Ms. Joan Arrington, Petitioner's common law wife)[2] at

---

[2] Joan Arrington was supposedly present in Petitioner's house when Rev. Becoat was visiting, on the night of the shooting. The brief filed by Petitioner's counsel does not identify Joan Arrington by her first name, but just states that "the two Arringtons" were exculpatory witnesses and should have been called at trial. See Kelly Supplemental Mem., Docket No. 32, at 10 ("Beside Rev. Becoat and the two Arringtons, there were two other such [exculpatory] witnesses: Holsey Miller and Traylor. . . .Suffice it to say that I rely on the failure to present all available witnesses, and particularly Reverend Becoat, as a ground that has *never* been waived or abandoned.") (emphasis in original). Petitioner's counsel does not explain the "Arrington" claims in his brief, or why trial counsel's failure to present "the Arringtons" made him ineffective. Indeed, Petitioner's counsel did not mention the Arringtons at all in his official Objections to the Report and Recommendation. See Objections to Report and Recommendations of Magistrate Judge Timothy R. Rice, Docket No. 27. These factors suggest that the claims regarding "the Arringtons" may not have actually been raised in Petitioner's objections to the Report and Recommendation.

However, Petitioner himself mentioned Joan Arrington in a set of objections that he filed pro se shortly after Petitioner's counsel filed his official Objections to the Report and Recommendation. See Letter from Petitioner, Docket No. 28. Also, "the Arringtons" are arguably included in counsel's general assertion that trial counsel was ineffective for failing to present alibi witnesses.

The claim regarding Joan Arrington appears to have been raised in the state courts and is therefore arguably proper for this Court review. That said, Judge Rice correctly found the claim regarding Joan Arrington to be meritless for the same reasons as the claim regarding Rev. Becoat, that is, because trial counsel's decision not to present an alibi defense was a reasonable

Petitioner's home, 6 blocks away from the scene of the crime. Petitioner claims that Ms. Holsey Miller and Mr. Traylor should have been called at trial. According to Petitioner, these witnesses would have provided descriptions of the men they saw before the shooting, which would have conflicted with a description of Petitioner.

Judge Rice carefully analyzed the potential testimony of the witnesses Petitioner claims should have been called at trial, providing an analytic framework and an accurate summary of the landscape of Petitioner's trial. See Report and Recommendation at 29-34. He persuasively concluded that even if trial counsel had known of Ms. Holsey Miller and Mr. Traylor before trial,[3] the ineffectiveness claims fail under a de novo review because Petitioner was not prejudiced by trial counsel's failure to present Ms. Holsey Miller and Mr. Traylor at trial. Judge Rice correctly determined that the absent witnesses would have provided testimony that was internally inconsistent, and that there were substantive differences between the information contained in the witnesses' pre-trial statements, the information presented in their affidavits, and

strategy. See Report and Recommendation at 28.

As Judge Rice notes, any claim regarding Wanda Arrington was waived because Petitioner did not raise it in state court. See id.

[3] At the December 7, 1999 evidentiary hearing, trial counsel testified that he did not know of these witnesses before trial, and the state court credited this testimony. A state court's factual determination is entitled to a presumption of correctness unless there is "clear and convincing evidence" to the contrary.

Judge Rice noted, and the Court agrees, that there was significant evidence to question the credibility of trial counsel's testimony on this point. For instance, Mr. Traylor's name and statement were given to trial counsel during discovery, and Ms. Holsey Miller was listed as a possible witness during voir dire. However, even if this evidence was sufficiently "clear and convincing" to rebut the presumption of correctness (which the Court concludes it was not) the presentation of the two witnesses would not have presented "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See Report and Recommendation at 28-33 (case citations omitted). In other words, trial counsel's failure to present Ms. Holsey Miller and Mr. Traylor did not fundamentally prejudice Petitioner.

the information about which they testified at the state court evidentiary hearing.

As for Rev. Becoat, the Court agrees with Judge Rice that trial counsel's decision not to present an alibi defense for Petitioner was reasonable under the circumstances. This analysis extends to the proposed testimony of Ms. Joan Arrington as well, inasmuch as her testimony would have served the same function as that of Rev. Becoat, that is, placing Petitioner within 6 blocks of the location of the shooting on the night in question.

With respect to Ms. Holsey Miller and Mr. Traylor, neither saw the shooting, and at most they could have testified to seeing men who were not Petitioner near the location where the shooting took place, approximately fifteen minutes before the shooting. As Judge Rice observed in his Report and Recommendation, it is by no means clear what these individuals would have actually testified to, because the descriptions of the men they allegedly saw changed from one presentation to the next in terms of what the men were wearing, the description of the men's relative complexions, and the like. In particular, it appears that Ms. Holsey Miller's renditions varied greatly in the details of who she saw, when and where, and there were marked discrepancies between her statements to the police and her statements to the court regarding the events of the evening in question.

Trial counsel explained not calling Rev. Becoat by pointing to his trial strategy of not wanting to place Petitioner so near to the scene of the crime. He also thought that Ms. Williams was a particularly bad witness whom he could discredit through cross-examination. To that end, there was evidence presented that Ms. Williams was using illegal drugs around the time of the shooting, made an improper identification of Petitioner and changed her story during the investigation. Trial counsel also stated that he was not confident that Rev. Becoat could place

Petitioner in his presence at the time of the crime.

Trial counsel is afforded a wide degree of deference in his trial strategy and professional judgment, and Petitioner would have to show that he was prejudiced in order to prevail on his ineffectiveness claims. Trial counsel's strategy not to present the witnesses discussed above was not unreasonable, and did not prejudice Petitioner.

**IV. Facts Not in Evidence**

Petitioner's brief repeatedly suggests or refers to facts that are not in evidence. For instance, Petitioner's counsel refers to what he learned during an interview he conducted with Calvin Edwards, Petitioner's brother, but the notes from this interview are not in evidence. Counsel also speculates that "possibly someone helped [witness Colie Baxter] understand the implications of putting Kelly in the black jacket," and states that Colie Baxter assisted police in loading the victim's body onto the paddy wagon. Kelly Supplemental Mem., Docket No. 32, at 2-3. There is no evidence to support these assertions. Similarly, counsel represents, "I am told there are no red lights on Diamond, but I have not made a personal investigation." Id. at 3, n.4. Finally, in arguing that Colie Baxter's identification procedure was suggestive and improper, counsel states, "[w]e must presume that Kelly's picture was shown to Baxter." Id. at 4. However, counsel does not explain *why* "we must presume" this fact. These factual suggestions and references - whether proper or not - relate to claims that Judge Rice properly concluded to be procedurally defaulted or waived.

**V. Conclusion**

For the reasons discussed above, the Court will approve and adopt the Report and Recommendation issued by Magistrate Judge Timothy R. Rice, and deny the Petition for Writ of

Habeus Corpus. An Order consistent with this Memorandum follows.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge